# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TENNESSEE
### EASTERN DIVISION

| | | |
|---|---|---|
| ERIC D. GLOVER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| VS. | ) | No. 16-1074-JDT-cgc |
| | ) | |
| CORRECTIONS COPORATION OF | ) | |
| AMERICA, ET AL., | ) | |
| | ) | |
| Defendants. | ) | |

---

ORDER GRANTING SECOND MOTION TO FILE AN AMENDED COMPLAINT
(ECF NO. 16), DENYING REMAINING MOTIONS, DISMISSING CLAIMS,
CERTIFYING AN APPEAL WOULD NOT BE TAKEN IN GOOD FAITH
AND NOTIFYING PLAINTIFF OF APPELLATE FILING FEE

---

On April 14, 2016, Plaintiff Eric D. Glover ("Glover"), who is currently incarcerated at the Hardeman County Correctional Facility ("HCCF") in Whiteville, Tennessee, filed a *pro se* complaint pursuant to 42 U.S.C. § 1983 accompanied by a motion to proceed *in forma pauperis*. (ECF Nos. 1 & 2.) The Court granted leave to proceed *in forma pauperis* and assessed the civil filing fee pursuant to the Prison Litigation Reform Act ("PLRA"), 28 U.S.C. §§ 1915(a)-(b). (ECF No. 5) On May 3, 2016, Glover filed an amended complaint intended to supplement rather than supersede the original complaint. (ECF No. 7.) On June 8, 2016, Glover filed a motion to file a second amended complaint. (ECF No. 13.) Because that amended complaint details a separate incident, at a separate time, against different defendants from the original complaint, the motion to file an amended complaint is DENIED pursuant to Federal

Rule of Civil Procedure 8(a) because the claim would not be properly joined.[1]  On September 2, 2016, Glover filed a second motion to file an amended complaint identifying the "John Doe" intake doctor named as a Defendant in the original complaint as Dr. Bernard Dietz.  (ECF No. 16.)  That second motion to file an amended complaint is GRANTED.  The Clerk shall record the Defendants as Corrections Corporation of America ("CCA"), HCCF Warden Grady Perry, HCCF Nurse Practitioner Ollie Herron, Health Services Administrator ("HAS") Alicia Cox, HSA J. Miller, and Intake Physician Bernard Dietz.[2]  The Defendants are sued in their individual and official capacities.

## I.  The Amended Complaint

Glover alleges that he arrived at HCCF from Bledsoe County Correctional Complex ("BCCX") on July 7, 2014, after receiving his initial administrative and medical classification.  (ECF No. 7 at 3, ¶ 1.)  Glover alleges he has had a medical designation of Class B since 2007,[3] stating that he has been diagnosed with several

---

[1] In *George v. Smith*, the Seventh Circuit explained:

> A party asserting a claim to relief . . . my join, either as independent or as alternate claims as many claims, legal, equitable, or maritime, as the party has against an opposing party.  Thus multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2.  Unrelated claims against different defendants belong in different suits.

507 F. 3d 605, 607 (7th Cir. 2007).

[2] The complaint also purports to sue CCA "John or Jane Doe board members" as well as "CCA Medical Service Providers."  Service of process cannot be made on a fictitious party.  The filing of a complaint against a "John Doe" defendant does not toll the running of the statute of limitation against that party.  *See Cox v. Treadway*, 75 F.3d 230, 240 (6th Cir. 1996); *Bufalino v. Mich. Bell Tel. Co.*, 404 F.2d 1023, 1028 (6th Cir. 1968).

[3] Glover states that Class A medical designation means a clean bill of health

ailments including: spinal stenosis, post-traumatic stress disorder, high level anxiety depression, scar tissue in left and right groin area due to hernia surgeries, a history of hematoma in the middle of his head, and several fractures in his right hand causing his right hand to be permanently deformed. (*Id.*at 4, ¶¶ 7-10.)

Glover contends that when Defendant Dietz[4] was giving him a medical re-classification from BCCX, Glover tried to explain to Defendant Dietz that BCCX made a mistake with his original medical classification, but he did not press the issue at that time because he knew he was going to be at BCCX for a limited time and because he had been assigned a bottom bunk while at BCCX. (*Id.* at 4, ¶¶ 11-12.) Defendant Dietz allegedly only checked for hernia scars but did no other examination and "basically ignored" Glover's Tennessee Department of Correction ("TDOC") medical files, resulting in Defendant Dietz classifying Glover as Class A, clean bill of health. (*Id.* at 4, ¶¶ 13-14.) Glover contends this designation led to Glover being assigned to a top bunk in May 2015 and that he later fell out of the bunk on June 24, 2015. (*Id.* at 5, ¶ 15.)

In the spring of 2015, Defendant Perry locked down the facility and ordered all plastic chairs removed from cells, including the Mental Health Unit, G-Unit. (*Id.* at 5, ¶ 16.) Glover contends the removal of chairs was done not as a security precaution but rather to cause unnecessary hardship on inmates, like himself, who have a medical need for the chairs. (*Id.*) Glover contends that most of the inmates in the G Unit are heavily

---

with no physical or mental limitation, whereas a Class B medication is the opposite of Class A, with restrictions such as not being assigned a top bunk, no heavy lifting, and no bending stretching or stooping. (ECF No. 7 at 4, ¶ 7.)

[4] References to "John Doe intake physician" are being replaced with Defendant Dietz in accordance with Glover's amended motion from June 8, 2016. (ECF No. 16.)

medicated and use the chairs to navigate up and down the top bunks because there are no ladders attached to the bunks and the majority of the bunks are installed improperly. (*Id.* at 5, ¶ 17.) Glover contends that he, as well as other inmates with back and spinal issues, uses the chairs to give back support, and that because he is only five feet tall, without the chair he is forced to jump off the top bunk causing immediate pain to his spine, back and groin areas. (*Id.* at 5, ¶¶ 17 & 18.) Glover alleges that the top bunk is four to five feet off the ground. (*Id.* at 5, ¶ 19.) Further, he contends the bunk is in need of replacement because it is installed backwards and bent down towards the floor, which causes the mattress to slide off without any means of stopping it. (*Id.* at 5, ¶¶ 19-& 20; *see also* ECF No. 7-3, Ex. W.)

Glover alleges that he was told that a work order was put in to replace the bunk, but it remains broken. (*Id.* at 6, ¶ 21.) Further, Glover alleges that during the lockdown there was sufficient time to assess, at an individual level, which inmates needed to have the chairs due to age and/or medical need, and that grievances to that effect received a response from the warden stating that he was not giving chairs back to inmates. (*Id.* at 6, ¶¶ 22-23.) Glover contends that the continuous deprivation of chairs was a "blatant, reckless disregard, for the safety of inmates and their serious medical needs." (*Id.* at 6, ¶ 24.)

Glover alleges that he was injured on June 24, 2015, when he fell off the top bunk in G-B 103. (*Id.* at 6, ¶ 26.) Glover contends that he began to slide off the bunk, but did not realize how quickly he was falling due to the medication he was on and, without a chair, he could not catch himself or grab onto the lip of the bunk because it was installed backwards. (*Id.* at 6, ¶¶ 26-28.) Glover crashed into the steel shelves and

the concrete floor, resulting in a cut in the back of his head and temporarily being knocked out. (*Id.* at 6, ¶¶ 29-30.) Glover was taken to medical where he was seen by Defendant Herron, who gave Glover a quick exam, cleaned the cut on his head, rubbed the bottom of his feet, and asked Glover if he was okay. (*Id.* at 7, ¶¶ 31 & 32.) Although Glover responded that he was okay, he contends that Defendant Herron, as a trained nurse, should have known that his response was due to a possible concussion or the effects of his previous medication and should have disregarded his response and provided him with a more thorough exam instead of rushing him out of medical, which he claims is the common practice at HCCF. (*Id.* at 7, ¶¶ 31-34.) Glover contends he was not treated with human decency or dignity as he was made to walk over 100 yards back to his cell pod without any shoes or socks, risking MRSA or staph infection. (*Id.* at 7. ¶ 35.)

After a few hours, Glover became "physically aware of the extent of his injuries" and returned to medical on emergency sick call where he saw Defendant Herron, but he was not given additional treatment or examination even though his neck and back were throbbing with pain and the right side of his face was swollen. (*Id.* at 7-8, ¶¶ 36-41.) Glover contends he filed a grievance for lack of medical care against Defendant Herron, to which the Grievance Board responded that "'he should be re-evaluated for his head injuries;'" however, Defendant Perry responded that Glover needed to submit a sick call request even though Glover already had done so after his original emergency sick call. (*Id.* at 8, ¶¶ 41-43, *see also* Ex G.) Glover appealed the grievance, but the TDOC Commissioner's Office agreed with Defendant Perry. Glover contends that was not surprising due to the medical committee being made up of

private, for-profit companies. (*Id.* at 8, ¶ 44.) Glover alleges that he had already submitted several sick calls, but was refused re-examination, even to confirm his spinal stenosis and was told that he had already been examined in May of 2014, which resulted in his continued assignment to a top bunk. (*Id.* at 9, ¶¶ 45-46.) Glover contends that over the next seven months he put in sick call requests, a number of which were not responded to at all, and requests to the HSA, which were ignored. (*Id.* at 9, ¶¶ 51-53.) Glover alleges that because his physical injury was so bad, he failed to complete the last month of a three-month business course which would have taken two months off his eight-year sentence, was barely able to eat causing him to lose twenty-five to thirty pounds, and that his anxiety medication has increased. (*Id.* at 9, ¶¶ 53-57.)

Glover states that he has tried to open a line of medical correspondence with Defendant Miller, but he has not heard back from her. (*Id.* at 10, ¶ 59.) Glover believes that if the Court does not step in, he will suffer irreparable harm or even death. (*Id.* at 10, ¶ 60.) As of March 10, 2016, Glover alleges that he has still not seen a medical physician after his injury from June 24, 2015 because the cost of properly diagnosing him would come at the expense of CCA and HCCF. (*Id.* at 11, ¶ 66.) Glover further alleges that CCA has, by policy and custom, endorsed the deliberate indifference committed by employees of HCCF, has failed to allocate funds to properly equip and train its medical staff, and has failed to establish and maintain consistent oversight of HCCF. (*Id.* at 11, ¶¶ 69-71.) Glover alleges that Defendant Cox failed to provide oversight of her staff at HCCF. (*Id.* at 13, ¶ 78.)

Glover seeks a preliminary injunction ordering CCA to transfer him to Baptist East Hospital in Memphis, Tennessee, for a full examination and prohibiting any

retaliation for this complaint, and ordering CCA to return the plastic chairs. Glover also seeks both compensatory and punitive damages. (*Id.* at 13-14, ¶¶ 81-86.)

## II. Analysis

A.  <u>Screening and Standard</u>

The Court is required to screen prisoner complaints and to dismiss any complaint, or any portion thereof, if the complaint—

> (1)     is frivolous, malicious, or fails to state a claim upon which relief may be granted; or

> (2)     seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(b); see also 28 U.S.C. § 1915(e)(2)(B).

In assessing whether the complaint in this case states a claim on which relief may be granted, the court applies standards under Federal Rule of Civil Procedure 12(b)(6), as stated in *Ashcroft v. Iqbal*, 556 U.S. 662, 677-79 (2009), and in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-57 (2007). *Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010). "Accepting all well-pleaded allegations in the complaint as true, the Court 'consider[s] the factual allegations in [the] complaint to determine if they plausibly suggest an entitlement to relief.'" *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 681) (alteration in original). "[P]leadings that . . . are no more than conclusions . . . are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679; *see also Twombly*, 550 U.S. at 555 n.3 ("Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief. Without some factual allegation in the complaint, it is hard to see

how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests.").

"A complaint can be frivolous either factually or legally. Any complaint that is legally frivolous would *ipso facto* fail to state a claim upon which relief can be granted." *Hill*, 630 F.3d at 470 (citing *Neitzke v. Williams*, 490 U.S. 319, 325, 328-29 (1989)).

> Whether a complaint is factually frivolous under §§ 1915A(b)(1) and 1915(e)(2)(B)(i) is a separate issue from whether it fails to state a claim for relief. Statutes allowing a complaint to be dismissed as frivolous give "judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." *Neitzke*, 490 U.S. at 327, 109 S. Ct. 1827 (interpreting 28 U.S.C. § 1915). Unlike a dismissal for failure to state a claim, where a judge must accept all factual allegations as true, *Iqbal*, 129 S. Ct. at 1949-50, a judge does not have to accept "fantastic or delusional" factual allegations as true in prisoner complaints that are reviewed for frivolousness. *Neitzke*, 490 U.S. at 327-28, 109 S. Ct. 1827.

*Id.* at 471.

"*Pro se* complaints are to be held 'to less stringent standards than formal pleadings drafted by lawyers,' and should therefore be liberally construed." *Williams*, 631 F.3d at 383 (quoting *Martin v. Overton*, 391 F.3d 710, 712 (6th Cir. 2004)). *Pro se* litigants and prisoners are not exempt from the requirements of the Federal Rules of Civil Procedure. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989); *see also Brown v. Matauszak*, No. 09-2259, 2011 WL 285251, at *5 (6th Cir. Jan. 31, 2011) (affirming dismissal of *pro se* complaint for failure to comply with "unique pleading requirements" and stating "a court cannot 'create a claim which [a plaintiff] has not spelled out in his pleading'") (quoting *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d

1167, 1169 (6th Cir. 1975)) (alteration in original); *Payne v. Sec'y of Treas.*, 73 F. App'x 836, 837 (6th Cir. 2003) (affirming *sua sponte* dismissal of complaint pursuant to Fed. R. Civ. P. 8(a)(2) and stating, "[n]either this court nor the district court is required to create Payne's claim for her"); *cf. Pliler v. Ford*, 542 U.S. 225, 231 (2004) ("District judges have no obligation to act as counsel or paralegal to *pro se* litigants."); *Young Bok Song v. Gipson*, 423 F. App'x 506, 510 (6th Cir. 2011) ("[W]e decline to affirmatively require courts to ferret out the strongest cause of action on behalf of *pro se* litigants. Not only would that duty be overly burdensome, it would transform the courts from neutral arbiters of disputes into advocates for a particular party. While courts are properly charged with protecting the rights of all who come before it, that responsibility does not encompass advising litigants as to what legal theories they should pursue.").

B.      § 1983 Claim

Glover filed his complaint pursuant to actions under 42 U.S.C. § 1983. Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two elements:  (1) a deprivation of rights secured by the "Constitution and laws" of the United States (2) committed by a defendant acting under color of state law.  *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970).

Claims against Defendants in their official capacity are construed as claims against their employer, CCA, who is already a named defendant.  The complaint does not assert a valid claim against CCA.   "A private corporation that performs the traditional state function of operating a prison acts under color of state law for purposes of § 1983."  *Thomas v. Coble*, 55 F. App'x 748, 748 (6th Cir. 2003) (citing *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996)); *see also Parsons v. Caruso*, 491 F. App'x 597, 609 (6th Cir. 2012) (corporation that provides medical care to prisoners can be sued under § 1983).  The Sixth Circuit has applied the standards for assessing municipal liability to claims against private corporations that operate prisons or provide medical care to prisoners.  *Thomas*, 55 F. App'x at 748-49; *Street*, 102 F.3d at 817-18; *Johnson v. Corr. Corp. of Am.*, 26 F. App'x 386, 388 (6th Cir. 2001).  CCA "cannot be held liable under a theory of respondeat superior."  *Braswell v. Corr. Corp. of Am.*, 419 F. App'x 622, 627 (6th Cir. 2011).  Instead, to prevail on a § 1983 claim against CCA, Plaintiff "must show that a policy or well-settled custom of the company was the 'moving force' behind the alleged deprivation" of his rights.  *Id.*   The complaint does not allege that Glover suffered any injury because of an unconstitutional policy or custom of CCA.

The allegation that CCA is a for-profit corporation is insufficient to establish that it had an unconstitutional policy, that the policy was applied in Plaintiff's case, and

that the policy was a "moving force" behind the denial of treatment. *Ezell v. Metro. Gov't of Nashville & Davidson Cnty.*, No. 3:11-0405, 2012 WL 2601940, at *8 (M.D. Tenn. June 6, 2012) (prisoner's "allegations that the purported policies existed at CMS and that these policies were directly responsible for his alleged lack of medical care are conclusory and are not buttressed by any factual allegations. Although the plaintiff speculates that medical care is denied to inmates by CMS for monetary, non-medical reasons, he provides no factual allegations supporting this speculation. . . . Further, the plaintiff has not set forth any factual allegations supporting the conclusion that any such policies were the moving force behind the alleged deficiencies in his own medical treatment as opposed to being the result of actions of individual actors. Merely positing a theory of legal liability that is unsupported by specific factual allegations does not state a claim for relief which survives a motion to dismiss.") (report and recommendation), *adopted*, 2012 WL 2601936 (M.D. Tenn. July 5, 2012); *Moffat v. Mich. Dep't of Corr.*, No. 09-14696, 2010 WL 3906115, at *9 n.11 (E.D. Mich. May 21, 2010) (allegation that "CMS had a policy of denying treatment in order to maximize profits" insufficient to survive motion to dismiss without supporting factual allegations) (report and recommendation), *adopted*, 2010 WL 3905354 (E.D. Mich. Sept. 27, 2010); *Crawford v. Mich. Dep't of Corr.*, No. 2:09-cv-7, 2010 WL 1424246, at *5 (W.D. Mich. Mar. 31, 2010) ("Plaintiff has pleaded no facts supporting his allegation that, pursuant to contract, Plaintiff's medical treatments were based upon cost concerns."); *see also Broyles v. Corr. Med. Servs., Inc*., No. 08-1638, 2009 WL 3154241 (6th Cir. Jan. 23, 2009) (inmate's "bare allegation of a custom or policy, unsupported by any evidence, are insufficient to establish entitlement to relief"). In this case, the pleadings

fail to set forth any facts suggesting that the execution of this policy, rather than individual malfeasance on the part of the Defendants, caused the alleged withholding of treatment.

Defendant Cox appears to be sued because of her role as the HSA. Under 42 U.S.C. § 1983, "[g]overnment officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*." *Ashcroft v. Iqbal*, 556 U.S. at 676; *see also Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984). Thus, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, violated the Constitution." *Iqbal*, 556 U.S. at 676.

> There must be a showing that the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it. At a minimum, a § 1983 plaintiff must show that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinates.

*Bellamy*, 729 F.2d at 421 (citation omitted). A supervisory official, who is aware of the unconstitutional conduct of his subordinates, but fails to act, generally cannot be held liable in his individual capacity. *Grinter v. Knight*, 532 F.3d 567, 575-76 (6th Cir. 2008); *Gregory v. City of Louisville*, 444 F.3d 725, 751 (6th Cir. 2006); *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999); *Lillard v. Shelby Cnty. Bd. of Educ.*, 76 F.3d 716, 727-28 (6th Cir. 1996). The complaint does not allege that Defendant Cox, through her own actions, violated Plaintiff's rights.

Glover's claims against Defendant Miller appear to be regarding her failure to investigate or remediate Glover's grievances; however, he has no cause of action against Defendant for failing to investigate or take remedial measures to the extent she was aware of his complaints. Although failure to investigate may give rise to § 1983

supervisory liability, *see Walker v. Norris*, 917 F.2d 1449, 1457 (6th Cir. 1990) and

*Marchese v. Lucas*, 758 F.2d 181, 188 (6th Cir. 1985), the reasoning in *Walker* and the

analysis in its progeny teach that evidence of a failure to investigate can establish

municipal liability only. In *Dyer v. Casey*, No. 94-5780, 1995 WL 712765, at *2 (6th

Cir. Dec. 4, 1995), the Court stated that "the theory underlying [*Marchese*] is that the

municipality's failure to investigate or discipline amounts to a 'ratification' of the

officer's conduct."

In *Walker*, the Sixth Circuit distinguished *Marchese* because the Court

"imposed the broad investigative responsibilities outlined in Marchese upon the Sheriff

in his official capacity." *Walker*, 917 F.2d at 1457 ("The Sheriff is sued here in his

official capacity and in that capacity, he had a duty to both know and act."). In 1998,

the Sixth Circuit affirmed the dismissal of a claim of supervisory liability based on the

"failure to investigate," stating:

> Young's claim against defendants McAninch and Goff is based solely
> on their alleged failure to investigate defendant Ward's behavior towards
> Young. Although Young stated that defendants McAninch and Goff had
> knowledge of his allegations against defendant Ward, this is insufficient
> to meet the standard that they either condoned, encouraged or knowingly
> acquiesced in the misconduct.

*Young v. Ward*, No. 97-3043, 1998 WL 384564, at *1 (6th Cir. June 18, 1998).

Glover's claims about the removal of chairs and unsafe bunk beds arise under

the Eighth Amendment, which prohibits cruel and unusual punishments. *See generally*

*Wilson v. Seiter*, 501 U.S. 294 (1991). An Eighth Amendment claim consists of both

objective and subjective components. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994);

*Hudson v. McMillian*, 503 U.S. 1, 8 (1992); *Wilson*, 501 U.S. at 298; *Williams v.*

*Curtin*, 631 F.3d at 383; *Mingus v. Butler*, 591 F.3d 474, 479-80 (6th Cir. 2010). The

objective component requires that the deprivation be "sufficiently serious." *Farmer*, 511 U.S. at 834; *Hudson*, 503 U.S. at 8; *Wilson*, 501 U.S. at 298.

To satisfy the objective component of an Eighth Amendment claim, a prisoner must show that he "is incarcerated under conditions posing a substantial risk of serious harm," *Farmer*, 511 U.S. at 834; *see also Miller v. Calhoun Cnty.*, 408 F.3d 803, 812 (6th Cir. 2005), or that he has been deprived of the "minimal civilized measure of life's necessities," *Wilson*, 501 U.S. at 298 (internal quotation marks omitted); *see also Hadix v. Johnson*, 367 F.3d 513, 525 (6th Cir. 2004) ("To succeed in an Eighth Amendment challenge, [a prisoner] must establish that . . . a single, identifiable necessity of civilized human existence is being denied . . . ."). The Constitution "does not mandate comfortable prisons." *Wilson*, 501 U.S. at 298 (internal quotation marks and citation omitted). "[R]outine discomfort is part of the penalty that criminal offenders pay for their offenses against society." *Hudson*, 503 U.S. at 9 (internal quotation marks and citation omitted). Thus, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.* at 9.

In considering the types of conditions that constitute a substantial risk of serious harm, the Court evaluates not only the seriousness of the potential harm and the likelihood that the harm will actually occur, but evidence that unwilling exposure to that risk violates contemporary standards of decency, *i.e.*, that society does not choose to tolerate the risk in its prisons. *Helling v. McKinney*, 509 U.S. 25, 36 (1993). The Supreme Court has also emphasized that prisoners can rarely establish an Eighth Amendment violation from a combination of conditions of confinement that, in themselves, do not rise to the level of a constitutional violation:

> *Some* conditions of confinement may establish an Eighth Amendment violation "in combination" when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise—for example, a low cell temperature at night combined with a failure to issue blankets. To say that some prison conditions may interact in this fashion is a far cry from saying that all prison conditions are a seamless web for Eighth Amendment purposes. Nothing as amorphous as "overall conditions" can rise to the level of cruel and unusual punishment when no specific deprivation of a single human need exists.

*Wilson*, 501 U.S. at 304-05 (citation omitted); *see also Thompson*, 29 F.3d at 242 ("Eighth Amendment claims may not be based on the totality of the circumstances, but rather must identify a specific condition that violates" a particular right); *Carver v. Knox Cnty., Tenn.*, 887 F.2d 1287, 1294 (6th Cir. 1989) (same).

To establish the subjective component of an Eighth Amendment violation, a prisoner must demonstrate that the official acted with the requisite intent, that is, that he had a "sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834; *see also Wilson*, 501 U.S. at 297, 302-03. The plaintiff must show that the prison officials acted with "deliberate indifference" to a substantial risk that the prisoner would suffer serious harm. *Farmer*, 511 U.S. at 834; *Wilson*, 501 U.S. at 303; *Helling*, 509 U.S. at 32; *Woods v. Lecureux*, 110 F.3d 1215, 1222 (6th Cir. 1997); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996); *Taylor v. Mich. Dep't of Corr.*, 69 F.3d 76, 79 (6th Cir. 1995). "[D]eliberate indifference describes a state of mind more blameworthy than negligence." *Farmer*, 511 U.S. at 835. Thus,

> [a] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. This approach comports best with the text

of the Eighth Amendment as our cases have interpreted it. The Eighth Amendment does not outlaw cruel and unusual "conditions"; it outlaws cruel and unusual "punishments." An act or omission unaccompanied by knowledge of a significant risk of harm might well be something society wishes to discourage, and if harm does result society might well wish to assure compensation. The common law reflects such concerns when it imposes tort liability on a purely objective basis. . . . But an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.

*Id.* at 837-38, 114 S. Ct. at 1979 (emphasis added; citations omitted); *see also Garretson v. City of Madison Heights*, 407 F.3d 789, 796 (6th Cir. 2005) ("If the officers failed to act in the face of an obvious risk of which they should have known but did not, then they did not violate the Fourteenth Amendment."). The subjective component must be evaluated for each defendant individually. *Bishop v. Hackel*, 636 F.3d 757, 767 (6th Cir. 2011); *see also id.* at 768 ("[W]e must focus on whether each individual Deputy had the personal involvement necessary to permit a finding of subjective knowledge.").

The complaint alleges that Defendant Perry removed plastic chairs from the cell, which combined with the improperly installed bunk, led to Glover's fall. The removal of chairs and the bunk beds in need of replacement are not conditions by themselves that cause a serious risk of danger, thus failing to meet the objective component of an Eighth Amendment claim. Regarding the subjective component of the claim, Glover concedes that the chairs were removed from all of the cells at the facility, not just from the cells occupied by inmates with a medical need for them. This fact belies Glover's allegation that the chairs were removed with the intent to cause him hardship. Also, Glover alleges that if Defendant Perry did a cell-by-cell walk though,

he would have seen the defective bunks, however, the implication is that Defendant Perry never assessed Glover's particular situation and, therefore, was not deliberately indifferent to Glover's specific situation. Therefore, Glover has also failed to establish the subjective component with regard to these Eighth Amendment claims.

. Glover alleges medical indifference during his initial intake as well as in his treatment after his injury. Under *Estelle v. Gamble*, 429 U.S. 97, 104 (1976), "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain,'. . . proscribed by the Eighth Amendment." However, not "every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." *Estelle*, 429 U.S. at 105. "In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. It is only such indifference that can offend 'evolving standards of decency' in violation of the Eighth Amendment." *Id.*, at 106.

Within the context of *Estelle* claims, the objective component requires that the medical need be sufficiently serious. *Hunt v. Reynolds*, 974 F.2d 734, 735 (6th Cir. 1992). "A medical need is serious if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Ramos v. Lamm*, 639 F.2d 559, 575 (10th Cir. 1980) (quoting *Laaman v. Helgemoe*, 437 F. Supp. 269, 311 (D.N.H. 1977)).

To make out a claim of an Eighth Amendment *Estelle* violation, a prisoner must plead facts showing that "prison authorities have denied reasonable requests for medical treatment in the face of an obvious need for such attention where the inmate is

thereby exposed to undue suffering or the threat of tangible residual injury." *Westlake v. Lucas*, 537 F.2d 857, 860 (6th Cir. 1976). The Court clarified the meaning of deliberate indifference in *Farmer v. Brennan*, as the reckless disregard of a substantial risk of serious harm; mere negligence will not suffice. *Id*. 511 U.S. at 835-36.

Glover's allegations against Defendant Dietz at intake do not arise to a medical indifference claim. While Glover alleges he was misclassified, it is clear from his complaint that, other than being assigned to the top bunk, he was in an area for patients with medical and mental health needs and was receiving medication. He does not allege that he was required to do any job or other activity that he was unable to do. Thus, the allegations against Dietz for medical misclassification do not amount to medical indifference.

Glover also fails to establish the subject component of an Eighth Amendment claim against Defendant Herron. He alleges that Herron failed to provide proper follow-up treatment after her first examination of Glover because it should have been obvious to a lay person that his injuries were potentially more severe than first seen and that his response to his initial exam was impacted by the extent of his injuries. However, Glover did receive initial treatment. Glover does not provide any claim that he is certified to recognize an injury, and the Court declines to attempt to evaluate the extent of his injuries. Lastly, Glover's claim that he lost weight due to the pain from the injury does not indicate that the pain was from lack of treatment rather than the normal healing process. Thus, while Glover may have a claim for negligence, his claims against Defendant Herron fail to meet the requirements for an Eighth Amendment violation.

Lastly, Glover also claims that he was continually prevented from receiving additional treatment after his fall; however, he does not allege that his condition worsened because of the lack of additional treatment. The attached grievances concern his medications for anxiety and other mental health medicines, and indicate that corrective measures were put in place to ensure Glover received his medicine. (ECF Nos. 7-7 & 7-8.) These allegations do not rise to the level of deliberate indifference.

For the foregoing reasons, Glover's complaint is dismissed in its entirety for failure to state a claim upon which relief can be granted.

### III. Standard for Leave to Amend

The Sixth Circuit has held that a district court may allow a prisoner to amend his complaint to avoid a *sua sponte* dismissal under the PLRA. *LaFountain v. Harry*, 716 F.3d 944, 951 (6th Cir. 2013); *see also Brown v. R.I.*, No. 12-1403, 2013 WL 646489, at *1 (1st Cir. Feb. 22, 2013) (per curiam) ("Ordinarily, before dismissal for failure to state a claim is ordered, some form of notice and an opportunity to cure the deficiencies in the complaint must be afforded."). Leave to amend is not required where a deficiency cannot be cured. *Brown*, 2013 WL 646489, at *1; *Gonzalez-Gonzalez v. United States*, 257 F.3d 31, 37 (1st Cir. 2001) ("This does not mean, of course, that every *sua sponte* dismissal entered without prior notice to the plaintiff automatically must be reversed. If it is crystal clear that the plaintiff cannot prevail and that amending the complaint would be futile, then a *sua sponte* dismissal may stand."); *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 114 (3d Cir. 2002) ("*in forma pauperis* plaintiffs who file complaints subject to dismissal under Rule 12(b)(6) should receive leave to amend unless amendment would be inequitable or futile"); *Curley v. Perry*,

246 F.3d 1278, 1284 (10th Cir. 2001) ("We agree with the majority view that sua sponte dismissal of a meritless complaint that cannot be salvaged by amendment comports with due process and does not infringe the right of access to the courts."). In this case, the Court concludes that leave to amend is not warranted.

IV. Conclusion

The Court DISMISSES Glover's complaint as to the Defendants for failure to state a claim on which relief can be granted, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b(1). Leave to further amend is DENIED. All other pending motions are DENIED.

Pursuant to 28 U.S.C. §1915(a)(3), the Court must also consider whether an appeal by Plaintiff in this case would be taken in good faith. The good faith standard is an objective one. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). The test for whether an appeal is taken in good faith is whether the litigant seeks appellate review of any issue that is not frivolous. *Id.* It would be inconsistent for a district court to determine that a complaint should be dismissed prior to service on the Defendants, but has sufficient merit to support an appeal *in forma pauperis*. *See Williams v. Kullman*, 722 F.2d 1048, 1050 n.1 (2d Cir. 1983). The same considerations that lead the Court to dismiss this case for failure to state a claim also compel the conclusion that an appeal would not be taken in good faith.

Therefore, it is CERTIFIED, pursuant to 28 U.S.C. §1915(a)(3), that any appeal in this matter by Plaintiff would not be taken in good faith.

The Court must also address the assessment of the $505 appellate filing fee if Plaintiff nevertheless appeals the dismissal of this case. A certification that an appeal is

not taken in good faith does not affect an indigent prisoner plaintiff's ability to take advantage of the installment procedures contained in § 1915(b). *See McGore v. Wrigglesworth*, 114 F.3d 601, 610-11 (6th Cir. 1997), *partially overruled on other grounds by LaFountain*, 716 F.3d at 951. *McGore* sets out specific procedures for implementing the PLRA, 28 U.S.C. § 1915(a)-(b). Therefore, the Plaintiff is instructed that if he wishes to take advantage of the installment procedures for paying the appellate filing fee, he must comply with the procedures set out in *McGore* and § 1915(a)(2) by filing an updated *in forma pauperis* affidavit and a current, certified copy of his inmate trust account for the six months immediately preceding the filing of the notice of appeal.

For analysis under 28 U.S.C. § 1915(g) of future filings, if any, by Plaintiff, this is the first dismissal of one of his cases as frivolous or for failure to state a claim. This "strike" shall take effect when judgment is entered. *Coleman v. Tollefson*, 135 S. Ct. 1759, 1763-64 (2015).

The Clerk is directed to prepare a judgment.

IT IS SO ORDERED.

 s/ **James D. Todd**
JAMES D. TODD
UNITED STATES DISTRICT JUDGE